Thank you all. The case is taken under submission. I'm glad you put that chair back, Counsel. No, that's okay. Okay, the next argued case is number 182116, Nationwide Sales and Services against Steel City Vacuum Company. Mr. Dunnigan. May it please the court, compared to what you've heard this morning, this is a relatively simple case. It's very simple. Inducement for breach of contract. It arises because we had a customer. Was there any evidence in the record regarding intentional procurement? Procurement, yes. In order to obtain a document from a Chinese supplier, you're going to need to submit a purchase order to this Chinese supplier. They're not going to willy-nilly walk into your place of business and offer it to you. Now, the purchase offers are part of the record. The invoices from the Chinese manufacturer to Steel City are in the record. Those invoices would not have come into existence unless there were a purchase order from Steel City to the Chinese manufacturer. That is the inducement. That is procurement, in your words. Okay, but the problem I'm having is I understand that now we're talking about four parts, right? Well, Your Honor, four parts are the subject of the evidence we put in here. Because the discovery was limited, there may be a lot more parts. Okay, well, in any event, for the moment, we're talking about four parts, okay? Correct, Your Honor. And I have the same question that Judge Wallet had, and that is in opposing summary judgment, where did you present evidence that they knew that these four parts were subject to the agreement with the Chinese that Nationwide had? Yeah, I looked pretty carefully at this. I've had my clerks look pretty carefully at this. I'm not seeing where in opposing summary judgment you presented any evidence that they knew that these four parts that they were purchasing were subject to the Nationwide-China agreement. Okay? Yes. Well, if we look at the evidence, I want to go back to 15, but if we go back to the evidence from cite us to the pages in the appendix that support your position. Let's look at the Genoa Declaration at about page 1360 of the appendix, which incorporates the manufacturers' agreement, which begins at page 1364. Now, what I want to call your attention to, Your Honors, is if you look at 1365 under the definition of tooling toward the top of the page in paragraph 2, the way that should be read and the way I think this is not responsive to my question. Well, at all. Where in the record do we find evidence that you submitted that there was an awareness that these four parts were subject to the agreement? Okay. I need a couple chains of logic to get there. One is, Your Honor, this agreement says that anything which is made for us is our tooling as it's defined in the agreement. This agreement, according to the declaration of our client, was submitted to Steel City on – The agreement doesn't mention the four parts, right? Well, the agreement – Yes. The agreement does not mention the four parts. Specifically, no. But generally, it provides that all parts which are made for – So where's the evidence that they were aware that the four parts were subject to this agreement? The fact that they saw the agreement and the agreement provides that anything made for us would be subject to this agreement and exclusively ours. So if they previously bought it from us, they saw the agreement demonstrating that anything that was made for us was part of the exclusivity involving the Chinese manufacturer, then they would have known that if they are buying the same part that they bought from us from the Chinese manufacturer, then they are buying our tooling, which is subject to exclusivity under this contract. Where in the closing and summary judgment did you show that that was the case? Where's the declaration that says that? You made an argument here. I understand what the argument is, but did you make it in closing and summary judgment? Yes. I believe it was made in – Okay. I'm looking at 1360, Your Honor, which says the agreement was given to them. The agreement was part of the record. And we talked about the fact, and this is at 1361, with Mr. Levine of Seal City. Where were the undisclosed products raised before the district court? When you say undisclosed products, Your Honor? The four products. The four parts. If we look at pages 10 and 11 of our brief. Record. It provides the record sites for each of the four parts. And where would that be in the record? Where? For example, for the part that ends in 851009, it was the subject purchase order. It ends in 4-2 at page 367 of the record. Is it correct that the summary judgment was on the pleadings without any embellishment? It is a regular procedure, as you will find, Your Honor. What happened was there were pleadings, and then the magistrate judge had Phase I discovery. And in Phase I discovery, you do what you need in order to try to settle the case. At the conference on June 15th of 17, he said, Don't go beyond trying to identify what parts were sold by the Chinese manufacturer to Steel City. There was no other discovery that was allowed at the conference. He explicitly said, Hold everything else. So that's the reason why there were no depositions of the Steel City people. Asking them, How did you know? What did you know? When did you know it? Because the magistrate judge would not let us get that far. Now, I think there's clearly enough evidence to establish a question of fact with respect to each of those elements of the inducement claim. But if you're asking why isn't there more, it's because, as Your Honor said, this was largely a decision made on the pleadings and not a decision after full-blown discovery. But you don't raise that issue in your brief. You don't say that summary judgment was inappropriate because we didn't get enough discovery, do you? That is correct, Your Honor. And our position now is the declarations of the Genovese, which explicitly say that we showed this agreement to Steel City in March 16, and they saw the full-blown agreement, and they knew or should have known, they knew, that the parts that they were buying from the Chinese manufacturer were exactly the parts that they were buying from us. What are pages 13, 26, and 27 of the appendix? 13 and 26. Page 13, 26 and 13, 27, it's the declaration of Mr. Dunn, who was the attorney for my client Blow. And it's a fugitive document. It doesn't have any foundation. It doesn't have anything. I thought that's where you were going to go when I asked you those questions. Well, when you were asking me the questions about procurement, I don't think the answer is Mr. Dunn's declaration. I think the answer is the declaration of a client saying that he had discussions with Mr. Levine of Steel City, that he gave the document, the contract, to Mr. Levine of Steel City in March of 16, and that if he had read the contract, he would have seen that anything that was purchased, anything that Steel City purchased from us, from Nationwide, would have been purchased from our Chinese manufacturer, which would have been subject to the agreement because all the things that we bought from our agreement were tooling, and parts made from tooling could only be purchased from us, and the fact that there were invoices from the Chinese manufacturers showing that Steel City bought parts, at least one of which was after that agreement was shown to Steel City, which showed that they were buying from Steel City the same parts that they were buying from us. I'm into our rebuttal time, so I will sit down. Okay. Thank you. Mr. Donovan. Good morning. May it please the Court, Gerard Donovan for Steel City. Here, Nationwide did not present evidence that the four parts are covered by the contract. They didn't present evidence that Steel City knew that these parts were covered by the contract when they were purchased, and they have not shown evidence that Steel City intentionally procured these parts for purposes of breaching the contract. Any one of these issues is sufficient to affirm the summary judgment that was granted here. Yeah, I'm glad that you're not arguing some of the other issues because there seem to be some grounds for the decision below which are questionable, such as the failure of the complaint to mention the four parts is somehow preclusive. That's a pretty hard argument. Right, and at this point, the Court had a record for summary judgment, and the Court allowed discovery. It asked the parties at an early discovery hearing what discovery was necessary to determine if the parts were made with tooling and if they're in this case. That discovery was taken. That discovery did not provide evidence either that Steel City knew what parts were covered by the contract or that these four parts identified, in fact, are covered by the contract. And so when faced with the record at the summary judgment stage, the Court ruled that there's no evidence sufficient to go forward. But on summary judgment, disputed facts need to be resolved against the movement, and there were significant allegations of facts that would have been resolved at some sort of contested trial, would it not? Well, at the summary judgment phase, they would have to present evidence that a reasonable jury could look at to resolve the facts in favor of the non-movement. Here, Nationwide presented no evidence that the contract covers the parts at issue. They presented no evidence that Steel City was aware of a contract covering those parts. But they were significant. There were declarations. There were statements by potential witnesses. That's correct, Your Honor. So if we turn to the appendix regarding Steel City's, whether or not Steel City had knowledge that these parts might be covered by the contract, the contract we were just looking at is at page 1365 and 1366. And section 2 of that contract, at appendix 1365, says that parts that are made with Nationwide's tooling are covered by the contract. But there's no evidence in the record that indicates that Nationwide ever communicated to our client what parts were covered by their tooling. We're talking about summary judgment. There's been no trial, so there is no evidence. There are representations. There's a complaint, allegations supported by sworn statements. I don't understand how these facts could have been resolved adversely on summary judgment. Your Honor, this would be that they wouldn't be supported after there's been full discovery. Your Honor, I'm sorry. First, our client requested to move to dismiss on just the pleadings, and the court permitted the parties to take discovery, permitted Nationwide to take discovery, to determine whether or not there were facts to support its claim. Nationwide took discovery and provided evidence. Documents were produced. In opposition to our summary judgment brief, Nationwide presented the evidence that they said created a fact dispute. That evidence, however, did not show that the parts it issued, the parts that our client purchased, were covered by the contract. They also did not show that our client was aware of any parts being covered by the contract. Your opposing counsel says that you saw the contract. I think he said you showed it. Right, so there's a dispute there. The declaration is worded so that it never actually says the contract was sent. It says that we attach as a letter that attaches the contract that's from myself to the president of Steel City. That declaration. We've got to assume for a summary judgment that there's a material dispute about whether you were shown the contract, right? That's not an issue here because the contract itself does not identify the relevant parts, and I think that's the more significant issue. But we have to assume that your client saw the contract for purposes of summary judgment. I'm not sure the record requires that because on the one side, the declarations don't actually say it was sent and our client's declaration says it was not received, and the question is whether our client had knowledge of it. But even if we assume that it was sent and our client received it or that that's a disputed fact, the contract does not specify the parts that are covered by the contract. It specifies that parts made with Nationwide's tooling are covered by the contract, and there's nothing in the record that says that Nationwide ever communicated what parts are covered with their tooling. So the declaration. There was no record. There was no trial. There are. There's no record. In opposition to summary judgment, declarations were provided that all factual. Is there anywhere in, speak fairly now, is there anywhere in the other side's declaration that might reasonably be read as saying that those four parts are made with Nationwide's tooling? No, there are not. So there are four communications or four pieces of evidence in the record that go to the communications between Nationwide and my client if those communications were sent, assuming they were for purposes of this argument. There is a letter that supposedly attached the agreement. That letter is at page, excuse me, appendix 1368. That letter does not specify any products that are made under this agreement. It says here's an agreement, and this agreement covers parts made with our tooling, but it does not provide our client with any information about what parts are made with our tooling. And for perspective on this, our client's been purchasing, it's undisputed, products from this Chinese supplier since 2005, and it purchases many products from this distributor. So there's no way for our client to know which products are made with their tooling. That letter is at 1368. That letter supposedly attaches the contract, the contracts at page 1364. Section 2 of that contract at page 1365 is the relevant section that addresses the tooling. It also does not specify what products are made with that tooling. The two Genoa Brothers declarations, the first one marked Genoa as a 1356, refers to having conversations with our client regarding their concern about this Chinese supplier and whether or not this Chinese supplier was making parts with its tooling for other people. But it does not indicate that they ever provided notice to our client about what products are covered by this agreement or what tooling is used. The other Genoa Brother, Scott, is at a declaration that's at page appendix 1369, and he also does not communicate to Steel City or make any representation that he ever communicated what products are covered by this. Finally, there's an e-mail that was sent shortly before this litigation, and that's at appendix 1391 from Scott Genoa to Steel City. That also does not identify what parts are covered by this contract. For perspective, the invoices that they provide as evidence of what products are supposedly under this contract start at appendix 1331, and these show hundreds of products that our client purchases from this supplier, and only very few have product numbers that Nationwide contends could be their products. Now, these product identifiers are Steel City product identifiers. These product identifiers identify what vacuum these parts are compatible with. They do not identify who made the part, what tooling the part was made for, and these are often standard parts. In the blue brief, Nationwide's opening brief, they admitted that from those numbers, you cannot tell if the parts were made with their tooling. This is at page 12 of their brief. Nationwide said they did not inspect the actual parts Steel City purchased from Nationwide's Chinese manufacturer to determine if they were proprietary parts. They went on to explain that such an inspection would be necessary to uncover Steel City's purchase of Nationwide's proprietary parts from Nationwide's Chinese manufacturer. So we do not have evidence from these part numbers that any parts that were actually made with Nationwide's tooling were purchased from the Chinese manufacturer. Additionally, if we look at the earlier invoices from when Steel City did purchase these parts from Nationwide, I guess this is a purchase order rather, but at page appendix 401, there's a description of these parts, and there's the part number 20363605. That's a Steel City part number. It shows that that matches up with Nationwide part number 39. We do not see in the invoices from the Chinese supplier that this is part number 39 or any Nationwide part. We only know that it has the same Steel City part number. If Steel City bought the same type of part from any manufacturer, it would have the same Steel City part number because it's compatible with the same vacuums. This part, as shown on appendix 401, is a brushroll end cap for a Eureka vacuum. So it's a standard part for Eureka vacuums that resellers sell. It's not in the record here, but my client's been purchasing this part since at least 2000 from other suppliers. The invoice that we have on page 1337 shows that 1,000 of these $0.08 parts were purchased from the Chinese supplier, but it doesn't say that these parts were made with their tooling. We have their admission that you have to inspect. I'm trying to understand the relationship of these 1,000 parts to this complaint. So the complaint is vague and doesn't specify what parts are particularly covered. It offers 14 specific parts. So the complaint mentioned some parts and others came up in the ensuing discussion. Why is it relevant that there are other parts that are not involved in dispute? What's relevant is that for all of the parts that have been identified at any point so far, the parts that were— But they haven't accused the entire device. Is that right? Right. This case isn't about the devices they go into. The question is whether or not the parts that Steel City purchased were purchased to intentionally breach a contract between Nationwide and a supplier. But was your position that the other 1,000 parts were also purchased from the same supplier through the same relationship? So the other—to back up, our client's been purchasing from this supplier since 2005, and that's undisputed in the record. And we purchased from them for all sorts of different vacuum cleaner replacement parts. So the answer to the question is no. I'm sorry. Maybe I don't understand the question. I'm trying to understand. You're telling us that there were 1,000 parts. What's all the fuss about? So there are only four parts that they raise in this appeal and that were raised in opposition to summary judgment. Those four parts, we have no evidence that our client was ever aware they were subject to a contract. And because our client wasn't aware that they were subject to— Our client received a letter stating that this particular relationship from this supplier was a serious question. So I don't think you can tell us that the client was not aware. You might say the client disagreed, but you're telling us the client was not aware that there was an issue? So our client's position is that it never received this letter. But even if the client received the letter, the letter does not specify what parts are covered by this contract. Our client had been buying parts from the supplier for over a decade. That's why we have the lawsuit to bring out the evidence. Right. We didn't get to that stage. Isn't that the question before us? No, Your Honor, we did get to that stage. We had discovery and they had the opportunity to take discovery. Isn't your position essentially that what was provided by the other side is incompetent and non-cognizable by the court below? Well, that's correct, but that's not all. The evidence they provided also does not show that our client was aware of a contract covering these parts. Or, more importantly, that our client didn't intentionally breach the contract. That's what I'm saying. The evidence provided lacks foundation, lacks specificity, and doesn't provide sufficient evidence to demonstrate the communication at issue. That's – I agree with everything you just said. But I do think to go even further, and this doesn't – this agrees with that, but the invoices they cite to even everyone but one of them is before the letter we received. I'm talking about the affidavits that are supposedly the foundational basis for the other documentation. Right, yes. The affidavits do not state the letter was sent. They do not explain which parts are covered by the letter or the contract. We don't have evidence of what tooling Nationwide supposedly provided to the supplier, and we don't know what parts would be made from that tooling. So even if our client had knowledge of everything that they allege our client had knowledge of, that would not give our client the relevant knowledge to potentially induce breach of this contract because they just simply didn't know what parts are covered by this contract. But separately, our client was also purchasing these parts from the Chinese supplier before our client received this letter. So even when this letter gave them that, our client was already purchasing these parts, and that's evidenced by the invoices at pages 1331 to 1336. Those invoices are from before the date of the letter. So even if our client became aware of this letter, our client was already purchasing these parts from this same supplier. And so I don't think there's any evidence to support that our client intentionally purchased these products to induce the breach of a contract when they're only continuing purchasing the products they were already purchasing. That's not a very good argument, but go ahead. Does the panel have any other questions? Otherwise, I see I'm out of time. Okay. No, thank you, Mr. Donegan. Mr. Donegan, I think you have six minutes. Thank you, Your Honor. We're beyond the issue of whether the district court erred in what he decided and on to the issue of whether or not there's any other basis in the record to affirm the result that was reached. And the overarching lens which I'd like the court to look at this from is, although there was not a 50-60 declaration and although they're not saying that there wasn't sufficient discovery, I think you have to analyze the extent of the evidence of procurement or inducement based upon the amount of discovery that the district court allowed. And the district court didn't allow discovery on that issue. Well, discovery allowed or not, the affidavits by the two brothers lack. The first one's better. Its conclusions are more forceful. But their conclusions are, and they lack foundation for any communication, any statement. How do we get past that? Well, I think on a motion for summary judgment, the evidence has to be construed in favor of... Rule 26 applies to the determination of motions for summary judgment. Is that not correct? Rule 56, Your Honor. Rule 56 incorporates the discovery rules starting with 26. Okay. And the evidence that's provided in opposition, you can do a 56-F saying I don't have the capacity, but there was no 56-F. I agree. I agree. And consequently, under Rule 26, you have to provide competent evidence. And this evidence is not competent. I completely agree. But when one of the Genoa brothers says, and I'll get the precise site. I'm on page 1361, paragraph 18. As far back as 2015, we, including him, have had conversations with Howard Levine of Steel City. Really? We? What does we mean? We mean... You know what foundational evidence requires? Absolutely. Absolutely. And I think this meets it. I don't think there's any dispute that this meets foundation. I mean, this is admissible. Somebody stands, I mean, somebody takes a witness stand and testifies. Let's take the word I. I had a conversation with Howard Levine back in 2015, and we discussed whether or not... Who, what, when, where, why, how? You know, who was present? What was said? What were the words spoken? Come on. I don't, I think that's fine cross-examination in trial. This is conclusory. No, this is conclusory. I disagree with you, Your Honor. It's the same confident affidavit. I disagree with you. That's it. I think whether or not this comes in is going to be discretionary on the part of the district judge. There was no motion to strike this, and there's no motion to say this is incompetent. I mean, in my experience, at least in the Southern District in New York, this would come in. I mean, I had a... Not when I sat there. Well... As a visiting judge, it wouldn't. But in any event, what I wanted to do is I wanted to trace backwards the chronology of how you can infer easily from this agreement that there was inducement. If we begin at page 1336, we will see an invoice from the Chinese manufacturer which is dated, strike that, 1337. An invoice from the Chinese manufacturer which is dated April 6th of 2016. That's after the letter which Judge Dyke says for purposes of summary judgment we need to assume was sent and received. Now, that refers to part ending in 92054. Then we go back and we find at... Why do we need to... Who did this at the summary judgment stage? You're making an argument here which isn't reflected in the declarations. And I don't even think was made as an argument in your summary judgment brief. You know, you've got a problem. Four parts. Who says they knew the four parts were subject to the agreement? You don't have any evidence. That's the next issue, Your Honor. What we're showing through these invoices is, one, they bought this part number from the Chinese manufacturer. Two, from 1336, they bought it previously from us. Where did you make that argument in opposing summary judgment? By attaching the agreement, saying that it was given to the... By attaching the documents? Is it sufficient to attach the documents to the district where it's supposed to figure out what your argument should be? Well, that's an interesting question. If the evidence is in the record, how specific does the argument in your memorandum have to be? And I apologize. I have not reread the memorandum so that I can specifically address that question, because I think the obligation of the party in opposing summary judgment is to put in evidence. And if the evidence is there, then at least the district court should hold oral argument, which didn't happen in this case, and say, where's your evidence? You've given me a pile of paper. This is mind-boggling. I'm sorry. It is just surreal. In the first place, you're relying on Judge Dike, which I don't think he said, that we have to assume at a summary judgment stage that documents were sent and received without foundational evidence? It throws the federal rules of civil procedure out the window. I don't think it throws the rules of evidence out the window, Your Honor. It defenestrates them. Okay? The witness says, we sent this letter to the other side. The other side said they didn't get it. That's a question of fact. The letter itself says, attached is a copy of the agreement dated such and such. Now, I think a reasonable inference is it attached what it said it attached. If it didn't, there would be a communication you would expect back saying, hey, you said there was an attachment, and there wasn't an attachment. They said they didn't receive the letter. That's a question of fact. If they're saying they didn't get the agreement that was attached to it, well, that can be no less of a question of fact, Your Honor. Only if you have competent evidence showing it was sent. Was the invoice that's in the record you provided, was that before the district court? Oh, yes. All of these invoices were before the district court. And could the presentation have been clearer? Yes. In hindsight, the presentation could have been clearer. I'm glad you agree with that. Okay. But, yes, I can always agree that something should be clearer. I mean, arguably, I would have done a better job. Arguably, I wouldn't have. But I don't want to criticize it because the evidence was there. And if you look at this evidence in the totality, there's a question of fact on even the procurement issue on which discovery wasn't even allowed. Any more questions? No, Ms. Johnson. Any more questions? Thank you, Your Honor. Thank you both. The case is taken under submission.